MARSHALL BROTHERS LUMBER CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 12987, 16608. Promulgated October 17, 1928.

1112

T. B. Benson, Esq., Harry Schwartz, Esq., and E. R. Zane, C. P. A., for the petitioner.

Harold Allen, Esq., and W. R. Lansford, Esq., for the respondent.

1114

OPINION.

GREEN: The question here is whether the petitioner is entitled to have its income from installment sales determined on the installment sales basis, and, if so, whether the record is sufficiently complete to enable such a determination to be made. It originally filed its returns on the accrual basis but, as set out in the findings, on May 16, 1923, it filed amended returns on what it believed to be a true and correct installment basis. The respondent rejected the amended returns on the ground that once the petitioner having elected to file on one basis it could not later elect to file on another basis for the same years. He now contends that the petitioner was not "regularly" engaged in selling personal property on the installment plan as that term is used in section 212(d) of the Revenue Act of 1926 and that at best its deferred payment sales could only be classed as "casual" sales and only those sales could be returned on an installment basis as exceeded $1,000 in amount and in which the initial payment did not exceed one-fourth of the purchase price. Section 212(d), *supra*, provides in part that:

Under regulations prescribed by the Commissioner with the approval of the Secretary, a person who regularly sells or otherwise disposes of personal property on the installment plan may return as income therefrom in any taxable

year that proportion of the installment payments actually received in that year which the total profit realized or to be realized when the payment is completed, bears to the total contract price. In case (1) of a casual sale or other casual disposition of personal property for a price exceeding $1,000, or (2) of a sale or other disposition of real property, if in either case the initial payments do not exceed one-fourth of the purchase price, the income may, under regulations prescribed by the Commissioner with the approval of the Secretary, be returned on the basis and in the manner above prescribed in this subdivision.

The above section was made retroactive by section 1208 of the 1926 Act to January 1, 1916.

The fact that the petitioner originally filed its returns on the accrual basis would not deprive it of the right to have its income determined on the installment basis, if, in fact, it met the tests provided in section 212(d), *supra*. We have repeatedly held that for the years subsequent to December 31, 1915, a taxpayer may, even though its books are not kept strictly upon the installment basis, report its income on that basis providing the books contain sufficient information and were so kept that the income could be computed on that basis. *L. S. Weeks Co.* v. *Commissioner*, 6 B. T. A. 300; *Warren Reilly* v. *Commissioner*, 7 B. T. A. 1327; *Redlick-Newman Co.* v. *Commissioner*, 8 B. T. A. 719; and *Mrs. C. H. Robinson* v. *Commissioner*, 8 B. T. A. 972. As a reference to the history of the installment sales method of returning income from the time of its conception in departmental regulations until it finally received legislative sanction by explicit enactment of the Revenue Act of 1926, see *Blum's, Incorporated*, 7 B. T. A. 737, pp. 751–758.

Did the petitioner " regularly " sell lumber and building materials, which are of course " personal property," on the installment plan within the meaning of the term " regularly " as used in section 212(d), *supra*, or should each sale it made on this plan be classed as " a casual sale " within the meaning of that term as used in the same section? The facts show that 83 such sales were made during the two years here in question. There were some made in every month during the two-year period except February, 1920, and May, 1921. The petitioner's president testified that " for the past eleven or twelve years we have catered to this business (installment plan) as much as our capital would allow us to." Counsel for respondent argues that because the cash sales amounted to five or six times as much as those on the credit or installment basis, it could not be said petitioner was " regularly " selling on the installment plan. We do not believe, however, that the proportion existing between the different classes of sales is controlling. The question is, did the petitioner " regularly " sell on the installment plan basis? The fact that it also sold on the cash basis is only one element to be considered along with other circumstances such as the frequency in which installment sales were made, the number of such sales and the general holding

out to the public that such arrangements could be made. We think the facts here conclusively show that the petitioner regularly sold personal property on the installment plan and that it should be permitted to report its income on that basis provided the record shows that its books contained sufficient information and were so kept that income could be computed upon that basis.

But when we examine the report referred to in the findings of fact we find that it is deficient in certain elements necessary to a correct computation of income on the installment basis. Reference is made to the items of "Returns and Allowances" of $17,518.40 and $17,-136.85, respectively, contained in the profit and loss statements for the years 1920 and 1921. In *Blum's, Incorporated, supra* (page 758 to page 762), we pointed out that the ordinary item of "Returns and Allowances" usually consisted of at least three different situations, each of which should receive different treatment in the determination of the percentage rate of gross profit to be applied against the cash collections. The first situation is where the contract is mutually canceled with both parties being restored to *status quo*. In that situation, we held that in determining the percentage rate of gross profit, the gross sales should first be reduced by the entire amount of such cancellations, and only the amount of the *net* sales should be used as the divisor with the gross profit realized or to be realized as the dividend. The second situation embraced those cases where sales were made and canceled in the same year but with the purchaser forfeiting the payments already made and the seller repossessing the merchandise usually depreciated somewhat in value by the damage and use while in the hands of the purchaser. The third situation is identical with the second except that the sales canceled consist of those made in a year prior to the current year. In each of the last two situations we held that for the purpose of computing the percentage rate of gross profit the proper procedure was as follows (pages 761–762) :

*In the case of sales made and canceled in the same year on account of default in payments:* Gross sales should be reduced by the total contract price of the canceled sales. All payments made and forfeited by purchasers should be included, in their entirety, in gross income, though not in gross or net sales upon which the percentage of gross profit on all other sales of the year will be computed. In order that the petitioner may have advantage of the deduction, in the year of repossession, of the full amount of the loss sustained, if any, through damage and use of merchandise while in the hands of the purchaser, the difference between the value at which such merchandise was included in the opening inventory, or the cost of the merchandise, according to whether it was on hand at the beginning of the year or was purchased during the year, and its value when repossessed, should be deducted from the cost of goods sold and taken as a separate loss deduction from gross income.

*In the case of sales canceled, on account of default in payments, in a year subsequent to the year or years in which made:* No deduction in the gross sales

of the year should be made. All payments made and forfeited by the purchaser, in the year in which the sale is canceled, should be included, in their entirety, in gross income for that year, though not in gross or net sales upon which the percentage of profit on sales for the year will be computed. Payments made in prior years should not be taken into account in computing gross income for the year in which the sale was canceled. The repossessed merchandise should be included in purchases at cost, less proper allowance for damage and use, if any, or at cost, less any part thereof previously recovered through payments made by the purchasers, in prior years, and not returned as income, whichever is lower. The difference, if any, between the cost, less allowance for damage and use, and cost, less any part thereof previously recovered, should be taken as a loss deduction from gross income of the year of repossession.

The cost of repossessed merchandise should be determined by applying to the contract price (selling price to defaulted purchaser) that percentage rate which is complementary to the percentage rate of profit for the year in which the sale was made.

No evidence was offered in the instant case as to what the above items of " Returns and Allowances " consisted. The nearest approach to evidence along this line was the testimony of petitioner's president on redirect examination which was as follows:

Q. Mr. Marshall, will you explain how you handled repossessions in case a purchaser defaulted in the payment? How would you put that on your books?

A. Yes, sir. That is closed under the deed of trust, and the property, where it is necessary for us to repossess it, is purchased by us and the full amount credited in that year, and we carry it then as real estate.

Q. The full amount of what is credited?

A. The full amount of the deferred payment is credited in that particular year that we repossess it.

Q. In the same manner as if it had all been paid in cash?

A. Yes; the same as if it had all been paid in cash.

Q. Then if you sold that same property a second time——

A. It would then go into our bills receivable, and if sold on the installment plan would be carried over the period of years that it was sold over.

Q. Being a new transaction?

A. Yes, sir.

Mr. BENSON. That is all.

The above testimony does not take cognizance of the three different situations discussed in the Blum case, supra, and previously referred to here, which situations must be present in all businesses done on the installment plan. The petitioner's books were not offered in evidence and the accountant who prepared the report referred to in the findings of fact did not testify. With only the accountant's report before us and with no explanation as to what the items of " Returns and Allowances" contained therein represented, we are unable from the record to determine properly the percentage of gross profit to sales for the years 1917 to 1921, inclusive, and since collections on sales made in each of those years were had during the years 1920 and 1921, it follows that we are likewise unable to properly determine the income of this petitioner on the installment basis for the years in question.

It should be noted in passing that section 705 of the Revenue Act of 1928, which was made retroactive to "the taxable year 1924 or any prior taxable year" does not apply to the present case for the reason that the provisions of that section are restricted to instances in which an *original* return was made prior to February 26, 1926, changing the method of reporting net income. In the instant case it was the *amended* return in which the petitioners sought to make the change.

The respondent in his brief has made several references to certain depositions which had been taken prior to the hearing in these proceedings. Such depositions, however, were not offered in evidence by either party. At the close of the hearing counsel for the petitioner remarked:

Depositions have been taken, but they will not be offered in evidence That is the petitioner's case. The petitioner rests.

Under such circumstances the depositions are not a part of the record and have not been considered by us in deciding the case.

Reviewed by the Board.

*Judgment will be entered for the respondent.*

PHILLIPS and ARUNDELL concur in the result.

LANSDON dissents.